IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 10, 2015 at Greeneville

## STATE OF TENNESSEE v. WILLIAM FRANKLIN ROBINETTE

**Appeal from the Criminal Court for Greene County**
**No. 10CR211    John F. Dugger, Jr., Judge**

---

**No. E2015-00154-CCA-R3-CD – Filed January 12, 2016**

---

The defendant, William Franklin Robinette, appeals from his Greene County Criminal Court jury convictions of solicitation to commit first degree murder, claiming that the sentence imposed by the trial court was excessive. Discerning no error, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Joseph O. McAfee, Greeneville, Tennessee, for the appellant, William Franklin Robinette.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Lesley Tiller, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Greene County Criminal Court jury convicted the defendant of two counts of the solicitation of first degree premeditated murder. The defendant appealed, and this court affirmed the convictions but remanded the case to the trial court for resentencing because no presentence report had been prepared prior to the original sentencing hearing as mandated by Tennessee Code Annotated section 40–35–205(a).[1] *See State v. William Franklin Robinette*, No. E2012-00640-CCA-R3-CD, slip op. at 1

---

[1] Code section 40-35-205(a) provides that, "[u]pon acceptance of a guilty plea or upon a verdict or finding of guilty, the court shall, in the case of a felony, . . . direct the presentence service officer to make a presentence investigation and report, except as provided in § 40-35-203 and subsection (b)." T.C.A. § 40-35-205(a).

(Tenn. Crim. App., Knoxville, Sept. 30, 2013), *perm. app. denied* (Tenn. Feb. 12, 2014).

The facts, as summarized by this court on direct appeal, established that the defendant solicited "Allen Correll and Amanda Turner to kill Rick Bowser, the [defendant's] co-defendant in another case, and Bowser's girlfriend, Ina Roberts." *Id.*, slip op. at 2. Mr. Correll said that in May 2010, while he stood outside the Greene County Courthouse smoking a cigarette, the defendant "approached [Mr. Correll] about 'making [his] charge partner disappear'" and told Mr. Correll that "'if he didn't find somebody to do it that he was going to do [it] himself.'" *Id.*, slip op. at 5. Mr. Correll and Ms. Turner, who had overheard part of the conversation, reported the matter to the police.

The police arranged for Mr. Correll to participate in a controlled telephone call with the defendant. During the call, Mr. Correll arranged to meet the defendant at a Wendy's restaurant. Prior to his meeting with the defendant, Mr. Correll was outfitted with audio recording equipment. During the conversation, which was monitored but not audio recorded due to an equipment malfunction, the defendant "asked Correll 'about blowing up a trailer. In order to do that he needed propane tanks and water hose.'" *Id.*, slip op. at 2. When Mr. Correll "asked why he could not shoot the victims," the defendant told him "that the victims had dogs and that after the first victim was shot, the other victim would call the police" and "insisted that [Mr.] Correll use propane tanks to blow up the house." *Id.* At the end of the conversation, the men made plans to meet at the defendant's residence on the following day.

Before the next day's meeting, the police provided Mr. Correll with an air compressor and propane tanks to take to the meeting and again outfitted Mr. Correll with audio recording equipment. *See id.* The police also placed a camera inside Ms. Turner's purse. During that day's monitored and recorded conversation, the defendant said "that he wanted [Mr.] Correll and [Ms.] Turner to blow up the mobile home of [Ms.] Roberts and [Mr.] Bowser, who was the [defendant's] co-defendant on a theft charge." *Id.*, slip op. at 3. The defendant told the pair to

> "put those propane tanks under the house trailer and turn them on ever so slightly you would have to run hose from where the propane tanks were, . . . about two hundred feet, away from the house. Then you would use another propane tank to charge that water hose line, and then once that line was charged it would act as a fuse. It would light one end of the hose that you were actively safe and the propane would burn up the hose and eventually reach to where the propane tanks were."

*Id.*, slip op. at 3. The defendant agreed to furnish the propane tanks. The defendant also told Mr. Correll and Ms. Turner to feed the victims' dogs "to keep them quiet while positioning the propane tanks." *Id.* He suggested that they "steal the water hose so that it could not be traced to them" and "gave them $20 cash." *Id.*

The jury convicted the defendant as charged of soliciting the first degree premeditated murder of Mr. Bowser and Ms. Roberts, and the trial court imposed consecutive sentences of 20 years' incarceration. As indicated, this court affirmed the convictions but remanded for a new sentencing hearing.

The trial court conducted a sentencing hearing on January 9, 2015. The State entered into evidence the defendant's presentence report, which listed six prior felony convictions and 3 prior misdemeanor convictions spanning nearly 30 years.

In determining the defendant's sentence, the trial court found the defendant to be a Range II offender and found that three enhancement factors were applicable: the defendant had a previous history of criminal convictions; the risk to human life was high; and the defendant was on probation at the time of the commission of the crimes. *See* T.C.A. § 40-35-114(1), (10), (13). The trial court found no mitigating factors to be applicable. With respect to the manner of service, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense and to protect society from a defendant with a lengthy criminal history, in addition to the defendant's lack of potential for rehabilitation. *See* T.C.A. § 40-35-103(1), (5). With respect to consecutive sentencing, the court found the defendant to be a professional criminal who knowingly devoted his life to crime; that the defendant had an extensive criminal record; and that the defendant was a dangerous offender whose behavior indicated little or no regard for human life and who had no hesitation to commit the crimes when the risk to human life was high. *See* T.C.A. § 40-35-115(b)(1), (2), (4). The trial court sentenced the defendant to 20 years' incarceration for both counts of solicitation to commit first degree premeditated murder and ordered the sentences to be served consecutively to one another and to the defendant's prior 6-year sentence for theft of property valued at $10,000 or more but less than $60,000, for a total effective sentence of 46 years.

On appeal, the defendant contends only that the trial court erred in its application of one enhancement factor and thus abused its discretion in imposing an excessive sentence. The State argues that the record fully supports the trial court's sentencing decision in this case.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range

sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012) (stating that "although the statutory language continues to describe appellate review as de novo with a presumption of correctness," the 2005 revisions to the Sentencing Act "effectively abrogated the de novo standard of appellate review"). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). The supreme court cautioned that, despite the wide discretion afforded the trial court under the revised Sentencing Act, trial courts are "still required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in Bise, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

In the instant case, the defendant concedes that the trial court properly applied the enhancement factors of a previous history of criminal convictions and his commission of the crimes while on probation, and the defendant does not contend that the trial court erred in its application of consecutive sentencing. The defendant only argues that the trial court erred in its application of the enhancement factor of the commission of the crimes when the risk to human life was high. We need not tarry long over the defendant's claim because, even assuming that the trial court misapplied this enhancement factor, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. Nothing in the record suggests that the trial court in this case "wholly departed from" the Sentencing Act. To the contrary, the record reflects that the trial court carefully considered all the relevant principles associated with sentencing, including the enhancement factors and the factors related to consecutive sentencing, when imposing the sentence in this case. Thus, we conclude that the record fully supports the length of sentence imposed in this case.

Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE